397 A.2d 812

COMMONWEALTH of Pennsylvania, Appellee,

v.

Michael Finley STEWARD, Appellant.

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Feb. 7, 1979.

Lester G. Nauhaus, Assistant Public Defender, Pittsburgh, for appellant.

Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

Appellant was tried by a jury and convicted of attempted robbery, aggravated assault, and violation of the Uniform Firearms Act. Post-verdict motions were denied and appellant was sentenced to consecutive prison terms of five to ten years for attempted robbery, five to ten years for aggravated assault, and two and one-half to five years for the firearm violation. On this appeal appellant argues that the court below erred in admitting an incriminating statement and in failing to instruct the jury concerning the voluntariness of that statement, and also that the evidence was insufficient to sustain the convictions.

Viewed in the light most favorable to the Commonwealth as the verdict winner, see *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973), the evidence was as follows: At approximately 7:00 p. m. on September 9, 1976, plainclothes police officers John James, Norman Leonard, and Ferris Hutton were on stake-out duty in Point State Park in downtown Pittsburgh. Their assignment was to investigate an outbreak of muggings and robberies in that area. After they had individually patrolled the area for approximately ninety minutes, the officers met. Officer James sat down on a park bench while Officer Leonard concealed himself in back of and to the left of Officer James, and Officer Hutton hid in the shadows of some nearby trees. From his vantage point, Officer Leonard saw appellant walking down a path near Officer James. Appellant was dressed in a waistlength blue denim jacket, dark pants, a floppy hat, and dark glasses. Officer James testified that as appellant approached the bench he stopped to peer into some bushes behind which was sitting a young couple, and then continued down the path, past the bench and Officer James, until he was approximately five to ten feet from Officer Leonard's hiding place. After a brief pause, appellant veered to the side, walked past Officer Leonard's hiding place, and circled back to the rear of the bench on which Officer James was seated. Appellant stood watching Officer James for a few minutes and then slowly approached the bench. When he

was within two feet of Officer James, the officer jerked suddenly to his left. Appellant fired two shots, one of which struck Officer James in the lower back, puncturing his spleen. As he fell to his knees, the officer drew his revolver and fired it. Appellant ran up a hill pursued by Officer Leonard. After a brief chase he was apprehended and returned to the bench, where Officer James made a positive identification. Appellant was arrested and taken to police headquarters. He was given his *Miranda* warnings, signed a waiver form, and made an incriminating statement to the police.

## I

At trial the Commonwealth was permitted to introduce evidence of the incriminating statement. According to one of the police officers to whom appellant spoke after his arrest:

A He stated to us that he went into the park for somebody to rob, decided to rob the old man, and shot him because the man reached back and the gun went off.

. . . He went down to Point Park, walked around, looked around; and he referred to Detective James as the old man.

He said that he saw him and decided to rob Detective James. We asked why he settled on him, and he said old people usually don't give you any trouble. He said that he went over to Detective James and he said that he approached Detective James from the right rear, and he also said that he had the gun in his right hand. He said prior to that he had the gun in his right jacket pocket. We asked him why he entered from the right rear—we asked him what position he entered from and he said to the rear and to the right of the man. We asked him why, and he said because I had the gun in my right hand and I wanted him to see the gun.

He said that he asked him for his money, and with that Detective James reached back and grabbed him. He said that the gun went off. We asked him how many times the gun went off, and he said that he couldn't recall.

(N.T. 167–68)

Appellant argues that the lower court erred in admitting this statement. The basis for this argument is that the statement could not properly be admitted because the Commonwealth had failed to show the corpus delicti of the crime of attempted robbery. While admitting that the evidence was sufficient to demonstrate an aggravated assault, appellant argues that since none of the witnesses testified to hearing him tell Officer James that he wanted to rob him or to seeing him attempt to take anything from the officer, there was insufficient proof of the intent to commit theft required for an attempted robbery.

█ It is established "that an extra-judicial admission or confession of one accused of crime cannot be received in evidence unless and until the corpus delicti of the crime has first been established by independent proof." *Commonwealth v. Turza,* 340 Pa. 128, 133, 16 A.2d 401, 404 (1940); *Commonwealth v. Rhoads,* 225 Pa.Super. 208, 213, 310 A.2d 406, 409 (1973). Failure to comply with the prerequisite of proof of the corpus delicti will result in the exclusion of the statement. *Commonwealth v. Rhoads, supra.* "The grounds on which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." *Commonwealth v. Turza, supra; see Commonwealth v. Johnson,* 235 Pa.Super. 185, 340 A.2d 515 (1975).

█ "Corpus delicti" has been defined as consisting of an occurrence of an injury or loss with someone's criminality as its source. *Commonwealth v. Rhoads, supra; see Commonwealth v. May,* 451 Pa. 31, 301 A.2d 368 (1973); *Commonwealth v. Patterson,* 247 Pa.Super. 527, 372 A.2d 1214 (1977). The proof may be circumstantial and need only demonstrate that the loss or injury is consistent with the commission of a crime. *Commonwealth v. Jones,* 242 Pa.Super. 471, 364 A.2d 368 (1976); *Commonwealth v. Johnson, supra.* The Com-

monwealth need not rule out every possible non-criminal cause. *Commonwealth v. Patterson, supra; Commonwealth v. Rhoads, supra.*

In the case at bar the Commonwealth contends that the evidence that Officer James was shot by a person standing two feet away at night in a park is consistent not only with the crime of aggravated assault but also with the crime of attempted robbery. In support of this contention the Commonwealth cites the fact that under the Crimes Code "[a] person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another." The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334 § 1, 18 Pa.C.S. § 3701(a)(1)(i). Thus, according to the Commonwealth, since the injury was of a type consistent with either an aggravated assault or an attempted robbery, appellant's statement describing the single criminal incident during which both of the alleged crimes occurred was admissible as evidence of the commission of both crimes.

This court was confronted with a similar problem in *Commonwealth v. Stokes,* 225 Pa.Super. 441, 311 A.2d 714 (1973). In that case the facts were as follows: When two police officers entered an apartment at the request of a tenant, they saw the defendant in a bedroom, pointing a rifle at them. Both officers retreated; one fired a shot. When one of the officers came back into the defendant's view, the defendant again raised the rifle. After police reinforcements arrived, the defendant surrendered. He was tried and convicted of carrying a concealed deadly weapon, pointing a firearm, and attempt with intent to kill. In order to convict the defendant of attempt with intent to kill, the Commonwealth was required to prove that he had pulled the trigger of the rifle. There was no evidence introduced at trial, however, that the defendant had in fact pulled the trigger except for his own statement that he had. In holding that the pointing of the rifle had established the

corpus delicti for both the charge of pointing a firearm and the charge of attempt with intent to kill, this court stated:

> In the present case, when the Commonwealth proved that appellant pointed a rifle at the officers, it established (at least *prima facie*) that appellant had committed the crime of pointing a firearm. Appellant's statement thereupon became admissible. It is true that the statement did more than corroborate the proof of the crime of pointing a firearm; by adding the fact that appellant had pulled the trigger, it supplied the additional proof needed to establish that appellant had also committed the crime of attempt with intent to kill. This fact, however, is no reason to exclude the statement. The two crimes charged arose from a single transaction, and had in common the element of pointing a firearm at someone. Perhaps if the two crimes were distinct, in time or nature or both, the case would be different; whether it would need not be decided. As it is, by proving the crime of pointing a firearm, the Commonwealth provided sufficient protection against "the hasty and unguarded character . . . often attached to confessions," *Commonwealth v. Turza, supra* [240 Pa.] at 134, 16 A.2d at 404, to entitle it to offer the confession of attempt with intent to kill. *Id.,* 225 Pa.Super. at 414–15, 311 A.2d at 715–16.

In light of this court's decision in *Commonwealth v. Stokes, supra,* it is clear that the lower court in this case did not err in admitting appellant's statement. The portion of the statement to the effect that appellant's intent in attacking Officer James was robbery was admissible, given the evidence concerning the officer's injury, because both charges arose out of the same criminal episode, and a conviction of either or both was consistent with the circumstances and the injury suffered by Officer James. The evidence offered before the statement was offered provided sufficient protection against "the hasty and unguarded character . . . often attached to confessions," *Commonwealth v. Turza, supra,* 240 Pa. at 133, 16 A.2d at 404, to

permit the introduction of the statement to prove both the aggravated assault and the attempted robbery.

## II

■ Appellant next argues that the lower court erred in not instructing the jury that if they found that appellant had in fact made a statement, they were then required to determine whether the statement was voluntary. Appellant admits, and the record shows, that at the conclusion of the charge to the jury no objection was made concerning the trial judge's failure to give an instruction on this point. (N.T. 322–23). Appellant argues, however, that the trial judge's failure represented fundamental error.

■ Allegations of fundamental error no longer serve to enable parties in criminal matters to seek reversal on alleged errors not properly raised below. *Commonwealth v. Clair,* 458 Pa. 418, 423, 326 A.2d 272, 274 (1974). Appellant's failure to make a timely objection to the charge causes his claim of error to be waived for purposes of this appeal. *See Commonwealth v. Richardson,* 476 Pa. 571, 588, 383 A.2d 510, 519 (1978); Pa.R.Crim.P., Rule 1119(b).

## III

■ Appellant's final argument is that the evidence was insufficient to sustain the convictions. In testing a sufficiency of evidence claim we first accept as true all the evidence upon which the finder of fact could properly have reached its verdict, and then, after giving the Commonwealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence and the inferences arising from it are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crimes of which he has been convicted. *Commonwealth v. Williams,* 468 Pa. 357, 365, 362 A.2d 244, 248 (1976); *Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Jacobs,* 247 Pa.Super. 373, 372 A.2d 873 (1977).

Appellant does not claim that the evidence did not prove the elements of the crimes charged; instead he argues that it was insufficient to prove that he was the individual who committed those crimes. This argument is without merit. Officer Leonard testified that appellant was the person who shot Officer James, and the person he caught running away from the scene. (N.T. 35–46) Officer James also testified that appellant was the person who shot him. (N.T. 192) Two other eyewitnesses also offered testimony connecting appellant with the attack; Balinda Hazlett said that she saw appellant shoot the officer (N.T. 231–32); Terry Porter testified that he heard the shot and saw appellant flee from the scene, discarding a gun and sunglasses as he ran. (N.T. 111–114) Appellant himself made a statement to the police that he had shot the officer during the robbery attempt. (N.T. 167–68) Moreover, a police expert testified that based on a neutron activation test, appellant could have fired the gun that caused Officer James's injury. (N.T. 260)

Affirmed.

PRICE, J., files a concurring statement.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.

PRICE, Judge, concurring.

I concur in the result reached by the majority. I do not, however, believe the rationale applied need be used under the facts, as correctly set forth in the majority opinion.

As I read this record, I am satisfied that the evidence adduced by the Commonwealth is clearly sufficient to establish the corpus delicti of attempted robbery. To me, therefore, it is unnecessary to rely on the rationale of the one criminal episode and common elements of the aggravated assault and the attempted robbery.

The corpus delicti having been properly established for attempted robbery, the confession was properly admitted.

I agree that the judgment of sentence be affirmed.