416 A.2d 563

**COMMONWEALTH of Pennsylvania,**

v.

**William J. COOLBAUGH, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Dec. 12, 1979.

Wilbert H. Beachy, III, Public Defender, Somerset, for appellant.

Anton H. Zidansek, Assistant District Attorney, Somerset, for Commonwealth, appellee.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

VAN der VOORT, Judge:

Appellant William J. Coolbaugh was arrested on February 7, 1978, charged with assault, disorderly conduct [in violation of 18 Pa.C.S. § 5503(a)(1) and (3)], and resisting arrest. The charge of resisting arrest was dismissed; a jury found appellant not guilty of assault; a judge found appellant guilty of disorderly conduct. Appellant was fined one hundred ($100.00) dollars. The case is before us on direct appeal, with appellant arguing that his conviction "was against the weight and sufficiency of the evidence presented in that the requisite mens rea for this offense [disorderly conduct] was not established."

The evidence, viewed in a light most favorable to the Commonwealth, *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974), establishes that on the evening of February 7, 1978, Officer Thomas Holland of the Shade Township Police Department responded to a call to investigate an accident on Legislative Route 55078. The road was icy, and the wind was blowing snow around, causing drifts. As Officer Holland drove over the crest of a hill he saw an

automobile sitting sideways across the road in front of him, partially in a snowbank. The police officer stopped his car and hollered to the person who was sitting behind the wheel, appellant William J. Coolbaugh. Receiving no response, Officer Holland walked to the passenger side of the vehicle and once again hollered in through the window. Appellant looked over, but looked away without responding. Officer Holland then opened the door of the car, put his head in, and noticed an odor of alcohol in the car. When Officer Holland asked appellant what the problem was, he was told to go to hell, and was also instructed several times by appellant to perform a certain sexual act upon himself. As Officer Holland continued his attempt to find the reason for the car to be sitting across the road, and as appellant became more and more belligerent, appellant's girlfriend, Debra Ann Kohan, walked up to the car and began screaming at the police officer. Officer Holland walked with Ms. Kohan to the rear of the car, where Ms. Kohan explained that the car belonged to her, that she had been driving it, and that she and appellant had been arguing. Appellant got out of the car at this time and pushed Officer Holland, who lost his balance and fell on the ice, hurting his hand against the side of the car and breaking the frames of his glasses. A scuffle ensued, with Ms. Kohan screaming, "rape, rape", until Officer Holland managed to put handcuffs on appellant, and place him in the police car.

Appellant concedes in his brief that his conduct consisted of "obscene language" and "fighting in the sense of pushing, shoving, and grappling", conduct proscribed by § 5503(a) of the Crimes Code.[1] Appellant argues, however, that his

---

1. Section 5503(a) provides:

"A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

conduct was not directed toward the public in general, but rather toward a particular individual, Officer Holland, and that his conduct therefore could not give rise to an inference that he intended to cause public inconvenience, annoyance, or alarm, or that he recklessly created a risk of public inconvenience, annoyance, or alarm. We disagree. Section 5503(c) of the Code provides: "As used in this section the word 'public' means . . . likely to affect persons in a place to which the public . . . has access; among the places included are highways . . . ." Appellant precipitated a scuffle between himself and another person (who happened to be a police officer) in a public highway, under conditions which constituted a danger to other motorists who might come driving down the road. The incident occurred between 8:30 and 9:00 P.M. on a winter's night, the road was snow-covered and icy, and the wind was blowing the snow around. Not only had the car which appellant had been riding in (or driving) turned sideways in the road, the police car skidded upon stopping at the scene. By fighting or engaging in "tumultuous" behavior in the roadway, appellant recklessly created a risk of "public inconvenience, annoyance or alarm" to other motorists who might have come along. We find that the evidence presented by the Commonwealth was sufficient to sustain appellant's disorderly conduct conviction.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I submit that the evidence in this case was insufficient to sustain appellant's conviction of disorderly conduct.[1]

1. Appellant was also charged with simple assault and resisting arrest. 18 Pa.C.S. §§ 2701, 5104. The resisting arrest charge was dropped before trial. The simple assault and disorderly conduct charges were tried together, but the simple assault charge was decided by a jury, while the disorderly conduct charge was decided by the trial judge alone. The jury acquitted appellant of simple assault but the trial judge convicted him of disorderly conduct.

Viewed in the light most favorable to the Commonwealth as the verdict winner, *see Commonwealth v. Steward*, 263 Pa.Super. 191, 194, 397 A.2d 812, 813 (1979), the evidence was as follows.[2]  At approximately 8:30 in the evening of February 7, 1978, Officer Thomas Holland of the Shade Township Police Department received a radio message that an accident had occurred on Legislative Route 55078.  He set out for the scene of the accident, proceeding along Route 55078, which was covered with snow and some icy patches.  On his way the officer saw an automobile that had skidded and come to a stop sideways across part of the road.  He radioed ahead to make sure that other officers had reached the scene of the accident.  They had, and he told them that he would be delayed because he wanted to check out an automobile that was sideways across the road.  He parked his automobile alongside the sideways automobile, rolled down his window, and called to appellant, who was sitting behind the steering wheel.  Receiving no response, the officer got out of his automobile, walked over to the passenger's side of the sideways automobile, and again called to appellant.  Appellant looked at the officer and turned away.  The officer opened the door on the passenger's side, leaned inside, and asked appellant what the problem was.  Appellant told the officer to go to hell, and made some other belligerent responses;  he had apparently been drinking.  Appellant's girlfriend appeared and began to argue with the officer.  He questioned her, and she told him that the automobile was hers and that she had been driving it.  According to her testimony at trial it had skidded on the ice and she had left appellant with it while she walked down the road to seek help, but returned when she saw the officer stop to investigate.  While the officer was talking to the girlfriend, appellant got out of the automobile, screamed at the officer to let her alone, grabbed the officer by the front

2.  Appellant's evidence was much different than the evidence that will be narrated.  It may well be that the jury accepted appellant's evidence, in deciding the simple assault charge.  *See* note 1 *supra*. However, as to the disorderly conduct charge the Commonwealth was the verdict winner.  In the narrative that follows I have therefore ignored evidence favorable to appellant.

of his jacket and pushed him. The officer started to lose his balance on the ice, and grabbed back at appellant. A brief scuffle ensued. After a few minutes the officer succeeded in handcuffing appellant and placing him under arrest. As a result of the scuffle the officer's eyeglasses were broken and he suffered damage to the ligaments of his hand.

My difference with the majority is that I believe that this evidence was insufficient to prove *mens rea.*

Section 5503(a) of the Crimes Code defines disorderly conduct as follows:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).[3]

Appellant admits that the evidence of his grabbing and pushing Officer Holland was sufficient to support a finding that he had "engage[d] in fighting or threatening." However, he argues that the evidence was insufficient to support a finding that he engaged in this conduct "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." In support of his argument appellant points to section 2709 of the Crimes Code, which defines the offense of harassment:

**3.** Section 5503(a) provides that "[a]n offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense." Appellant was charged with summary offense disorderly conduct, and upon conviction was fined $100.

A person commits a summary offense when, with intent to harass, annoy or alarm another person:

> (1) he strikes, shoves, kicks, or otherwise subjects him to physical contact, or attempts or threatens to do the same; or

> (2) he follows a person in or about a public place or places; or

> (3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

18 Pa.C.S. § 2709.

Appellant argues that while a conviction of harassment under section 2709 might have been warranted on the evidence in this case, a conviction of disorderly conduct under section 5503(a)(1), was not, as the evidence only showed an intent to affect the officer alone and not the public.

It is clear that the gravamen of the offense of disorderly conduct is the public impact that is either intended or recklessly risked. While the offense of harassment requires proof of intent only "to harass, annoy or alarm *another person*," the offense of disorderly conduct requires proof of intent "to cause *public* inconvenience, annoyance or alarm, or recklessly creating a risk thereof." *See Commonwealth v. Greene*, 410 Pa. 111, 115, 189 A.2d 141, 144 (1963) (cardinal feature of disorderly conduct under the statutory predecessor to the present Crimes Code is the public unruliness which can or does lead to tumult and disorder). Thus the Comment to the Model Penal Code section defining harassment explains that the offense of harassment is intended to cover "private annoyances" while the offense of disorderly conduct "is limited to disturbance of some *general impact*." Model Penal Code, § 250.4, Comment to Tentative Draft No. 13, p. 52 (1961) (emphasis added).

Here it is clear that the evidence was insufficient to show a "disturbance of some general impact." Except for Officer Holland and appellant, the only person present was appellant's girlfriend. This does not end the inquiry, however, for there may well be some situations where a "private annoy-

ance" will recklessly risk a "disturbance of some general impact." In other words, an act of harassment under section 2709(1) will become an act of disorderly conduct under section 5503(a)(1) in a situation where the risk of public impact is so great that the jury is justified in finding that the harasser was reckless in creating the risk. Before the jury is justified in finding such recklessness, the proof must show that the actor "consciously disregard[ed] a substantial and unjustifiable risk"[4] that the public impact would occur. The question in this case, therefore, is whether the evidence of appellant's actions toward Officer Holland was sufficient to support a finding that appellant disregarded a substantial risk of creating a public inconvenience, annoyance or alarm.

Unfortunately the Crimes Code does not provide a clear answer to the question of when and in what circumstances an actor by his "private annoyance" recklessly creates the risk of a "disturbance of some general [or public] impact." Subsection (c) of section 5503 defines a word "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access: among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa.C.S. § 5503(c). From this definition, it will be observed, two questions must be asked. First, did the act occur in a "public" place? Here it did; it occurred on a highway, which is specifically defined as a public place. Second, was the act one "affecting or likely to affect persons in a [public] place?" It is the meaning of this phrase that we must decide, in order to decide the present case. Al-

---

4. Section 302(b)(3) of the Crimes Code provides:

    (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

though there are no Pennsylvania cases that appear to have undertaken this task, there is other authority in point.

The requirement of proof of conduct "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," in section 5503(a), is derived from section 240.20 of the New York Penal Code.[5] S. Toll, Pennsylvania Crimes Code Annotated, 635 (Reporter's Comment) (1974). Several New York cases have decided the question of when evidence is sufficient under section 240.20 of the New York Penal Code to show that a harasser recklessly created a risk of a disturbance of general or public impact. *See People v. Mehdi*, 29 N.Y.2d 824, 327 N.Y.S.2d 659, 277 N.E.2d 673 (1971); *People v. Pritchard*, 27 N.Y.2d 246, 317 N.Y.S.2d 4, 265 N.E.2d 532 (1970); *People v. Todaro*, 26 N.Y.2d 325, 310 N.Y.S.2d 303, 258 N.Y.2d 711 (1970); *People v. Gingello*, 67 Misc.2d 224, 324 N.Y.S.2d 122 (1971), *rev'd on other grounds*, 69 Misc.2d 845, 330 N.Y.S.2d 921 (1972); *see also Seymour v. Seymour*, 56 Misc.2d 546, 289 N.Y.S.2d 515 (1968). The decisions in *Todaro* and *Gingello* are especially pertinent to this case as they both involved a confrontation with the police on a highway.

In *Todaro*, several youths congregated near a subway entrance on a street corner in New York City. A police officer requested several times that they move, but they ignored his requests. One of them, the defendant, directed some profanity at the officer, and the officer arrested him for disorderly conduct. The testimony at trial established that while there had been pedestrians and other people in the area during the confrontation, no one had been blocked from entering the subway, or otherwise affected by the confrontation. Citing this evidence, the defendant argued that the evidence was insufficient, as there had been no public inconvenience, annoyance or alarm. In nevertheless

5. Section 250.2 of the Model Penal Code has the same requirement. The Tentative Draft, numbered as section 250.1, provided that the actor was guilty of disorderly conduct if he did certain acts "with purpose to cause public inconvenience, annoyance or alarm, or with knowledge that he is likely to cause public inconvenience, annoyance or alarm."

holding the evidence sufficient, the Court of Appeals stated: "Appellant's emphasis on the contention that the *fact* of disorder was not established, to the exclusion of the *risk* that it might come to pass, ignores the very terms of the statute itself. On this record the trial court could well have found beyond a reasonable doubt that appellant was aware of and consciously disregarded a substantial and unjustifiable risk that 'public inconvenience, annoyance or alarm' might result . . . ." 26 N.Y.2d at 329, 310 N.Y.S.2d at 306, 258 N.E.2d at 713 (emphasis in original).

In *Gingello* the facts were these. At 1:15 a. m. on a winter morning in the city of Rochester a police officer stopped an. automobile for a motor vehicle violation. When the driver was unable to produce the required papers, the officer placed him under arrest. While the officer was arresting the driver, the defendant, a passenger in the driver's automobile, stood in the street and shouted at the officer that he had no right to arrest the driver, who was the defendant's friend. When the defendant refused the officer's request to get out of the street, and called the officer a vulgar name, the officer arrested him for disorderly conduct. At trial the officer admitted that no crowd was present at the scene and that no lights were on in the homes in the neighborhood. He testified that a crowd first gathered at the scene when the patrol wagon appeared to take the defendant into custody, some five minutes after the confrontation. Another officer testified that he saw some other automobiles on the street near the scene but that none of them stopped at the scene. In dismissing the disorderly conduct charge, the trial court held the evidence insufficient to show an intent to create a substantial risk of public as opposed to private harm. Said the court: "The lack of any public observance of the incident, the lateness of the hour of its occurrence, as well as testimony that when the public did gather it did so out of curiosity, are all factors which make it impossible to infer such intent and consequently impossible to convict the defendant of [disorderly conduct]." 67 Misc.2d at 228, 324 N.Y.S.2d at 125. The trial court did,

however, convict the defendant of harassment of the officer.[6]

I believe that the decisions of the New York courts in cases such as *Todaro* and *Gingello*[7] are persuasive in their conclusion, first, that in a disorderly conduct case, some important factors to be considered, in addition to the public nature of the location,[8] are whether other people were

6. The decision in *Gingello* was later reversed on the ground that the conviction of harassment was improper on a citation that only charged the defendant with disorderly conduct. 69 Misc.2d 845, 330 N.Y.S.2d 921 (1972).

7. As noted, *Gingello* was a trial court decision while *Todaro* was a decision by the Court of Appeals. *Gingello*, however, was based upon the decision by the Court of Appeals in *People v. Pritchard*, *supra*. In *Pritchard* the defendant and another juvenile engaged in a brief fight at a crowded dance hall. A large group of youths gathered to watch the fight but there were no disturbances or disorder among the crowd. The majority of Court of Appeals held the evidence insufficient to support a conviction for disorderly conduct, stating that the record was "devoid of proof or inference of recklessness such as to engender risk of disruption or disorder . . . . This purely personal clash and momentary teenage flare-up did not contain the seeds of such crowd reaction nor did it attain the degree of gravity warranting criminal prosecution under the statute." 27 N.Y.2d at 249, 317 N.Y.S.2d at 6, 265 N.E.2d at 533. The dissenters in *Pritchard* emphasized the presence of a large crowd during the fight as warranting a finding that the defendant had recklessly created a risk of public inconvenience, annoyance or alarm. The holding of the majority in *Pritchard* directly supports the trial court's decision in *Gingello*, and indeed, so does the opinion of the dissenters, for in *Gingello*, unlike in *Pritchard*, there was no crowd of onlookers present during the confrontation. *See also, People v. Mehdi*, *supra* (defendants' burning of flag in midst of large crowd was not an act of disorderly conduct as it did not recklessly create a risk of public inconvenience, annoyance or alarm).

8. The section of the New York Penal Code defining disorderly conduct does not contain any provision similar to section 5503(c) of the Crimes Code, which defines the term "public" with reference to whether an act was one "affecting or likely to affect persons in a [public] place." Section 240.00 of the New York Penal Code does define the term "public place" as "a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence." Thus, it seems fair to say that the New York courts have read into the New York Penal Code

present on the scene or likely to be present and whether those other people were likely to be affected by the actor's conduct, and second, that in determining whether there was substantial likelihood of people being both present and affected, facts such as the location of the public place, the time of day, the nature of the confrontation, and the identity of the people present may all be significant. There are several types of highways. The fact that an act occurs on a highway is not in itself as important as the type and location of the highway. A confrontation on a crowded street corner carries a greater likelihood of a public impact than a confrontation on a lonely country road. The time of day, the weather, and the road conditions may also be significant in determining the likelihood of people being both present and affected. Certainly a confrontation on a highway at 4:00 a. m. may entail a lesser risk of public impact than a confrontation on the same highway during the 5:00 p. m. rush hour. The nature of the confrontation itself may also be significant. A loud and continuous argument accompanied by blows will create a greater risk of public impact than will the utterance of a single obscenity. The identity of the people present may also be significant. A confrontation with police in the presence of an unruly crowd will carry a greater chance of a public impact than a confrontation before a crowd that is uninterested. *See People v. Scott*, 58 Misc.2d 455, 295 N.Y.S.2d 724 (1968) (refusal to move on crowded street where disturbances had occurred).

When this analysis is applied to the facts of this case, I submit that it is not clear beyond a reasonable doubt that by his actions appellant recklessly created a risk of public inconvenience, annoyance or alarm. There was no public present to be affected. No persons other than appellant, Officer Holland, and appellant's girlfriend were present; there was no evidence suggesting that any neighbors were close by. Nor, considering the nature and condition of the

the "affecting" requirement expressly stated in the Pennsylvania Crimes Code.

road and the weather conditions, can it be said that appellant created a substantial risk that the public would likely be affected. If appellant had committed the same act on a crowded city street, it could be said that appellant recklessly created a risk of public impact. Then the case would be like *Todaro.* However, here the likelihood of a public impact was substantially less than in *Todaro.* It was even less than in *Gingello.* At least in *Gingello* the incident took place on a city street where a crowd was likely to gather and be affected—in fact a crowd did appear later. Here there was no substantial likelihood that a crowd would gather—and in fact none did. Accordingly, I should hold that the evidence was insufficient to prove the requisite intent to sustain the conviction.

In holding the evidence sufficient, the majority accepts the Commonwealth's argument that there was a public impact because the incident occurred in the middle of an icy highway. This fact, according to the majority, shows that other motorists might have been inconvenienced. I cannot agree with this conclusion. There were no other motorists. Moreover, while I cannot deny that there was *some* risk of some other motorist coming along and being inconvenienced, I cannot hold that this risk was a *substantial* risk, as is required for a finding of recklessness. 18 Pa.C.S. § 302(b)(3). As has been mentioned, the evidence shows that the risk here was considerably less substantial than that in *Gingello,* where the New York court held the evidence of public impact insufficient. Indeed the gist of the majority's holding is that by proving that an incident occurred in a public location with *some possibility,* however slight, of *some* public impact, the Commonwealth may meet its burden of proving recklessness.

I also am not persuaded by the Commonwealth's other arguments in support of the conviction in this case.

The Commonwealth's argument that the evidence was sufficient because it proved that the incident occurred on a

highway and involved a police officer is refuted by the terms of the Crimes Code, which do not define culpability on the basis of location alone but require a public impact. To accept the Commonwealth's argument would read the requirement of public impact out of the Code, and would make the Code's provision of a separate offense of harassment mere surplusage. Any one-on-one confrontation with a police officer would be disorderly conduct, so long as it occurred on a highway. Such a result would be contrary to the expressed intent of the drafters of the Model Penal Code, who, in their Comment to Tentative Draft Number 13, said that the charge of disorderly conduct should not be abused in cases involving police officers. *See* Model Penal Code, 250.2, Comments to Tentative Draft No. 13, pp. 14–18 (1961). The proper charge in this case was harassment. The importance of the case, so far as the development of the law is concerned, is that the majority's opinion can only encourage abuse of the charge of disorderly conduct.

The Commonwealth's argument that there was a public impact because Officer Holland was delayed in responding to the accident that had occurred further down route 55078 is also without merit. First of all, the evidence was that Officer Holland radioed ahead and told the other officers who had already arrived at the scene of that accident that he would be delayed. Thus it is at the very least doubtful that anyone was inconvenienced by the officer's delay. Second, and more important, there was no evidence that appellant knew that the officer wished to get to the scene of the accident, and therefore intended, when he shoved the officer to cause, or recklessly risk causing, a public inconvenience.

The judgment of sentence should be vacated and appellant discharged.