## Commonwealth v. Connors

462

*Patricia Cassidy, assistant district attorney,* for the commonwealth.

*Joseph Cottree,* for defendant.

BERNSTEIN, *P.J.* May 20, 1987 — On May 20, 1987, this court heard the criminal charges against Tyrone Connors presented at informations 2499-2501 of March term, 1986. The evidence established beyond a reasonable doubt that on February 27, 1986, Mr. Connors, in concert with others, burglarized the apartment of Robert Jacobs and stole personal property therefrom.[1] At trial the commonwealth presented the preliminary hearing testimony of the complainant[2] and a written statement by the defendant given on the day of the burglary to Detective William Sammons of the Philadelphia Police Department. The defense did not challenge the reliability, accuracy or truthfulness of the statement and no constitutional challenge to its admissibility was raised. The defendant contends on appeal that it was error to permit the statement into evidence, claiming insufficient independent proof of the corpus delicti of the crimes for which he was convicted.

---

1. Defendant was acquitted of the charge of defiant trespass. 18 Pa. C.S. §3503(b).

2. This testimony was presented by stipulation of counsel.

The juridical purposes ruled by American corpus delicti are clear although its precise origin is obscure.

An early example of the concerns underlying what subsequently developed into the corpus delicti rule appears in an eighteenth century case originating in Philadelphia, *Commonwealth v. Dillon*. The facts in that case established that in December 1791, in Philadelphia, a stable burned to the ground and a 12-year-old child was charged with the then capital crime of arson. After visits and pressure by civic leaders over several days in custody and a visit to the dungeon in which he was told he could expect to be confined "dark, cold and hungry" unless he made a full disclosure, the child confessed to the mayor of Philadelphia that he had set the barn on fire. At trial this confession was introduced into evidence without independent evidence of the origin of the fire. The questionable reliability of the child's confession in the absence of other evidence of criminal event resulted in the first enunciation of the principle that a statement by itself cannot sustain a conviction in the United States.[3] In overturning the conviction the appellate court per Chief Justice McBride said, "[t]he true point for consideration, therefore, is, whether the prisoner has falsely declared himself as guilty of a capital offense: If there is ground even to suspect that he has done so, God forbid, that his life should be the sacrifice."

Neither the concept nor the term *corpus delicti* appear in any Pennsylvania reported decision for 90 years, at which time corpus delicti was cited as "familiar law". In the nineteenth century in the case of

---

3. *Commonwealth v. Dillon*, 4 Dal. 765 (1791).

*Gray v. Commonwealth*, 101 Pa. 380 (1882), the Supreme Court stated:

"While it is familiar law a confession is not evidence in the absence of proof of any corpus delicti yet I am not aware of any case which holds that the corpus delicti must first be proven beyond the possibility of doubt. It is a fact to be proved like any other fact in cause, and be found by the jury upon competent evidence. The true rule in such cases is believed to be this: When the commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury it is competent to show a confession made by the prisoner connecting him with the crime. Under such circumstances the jury should first pass upon the sufficiency of the evidence of the corpus delicti. If it satisfies them beyond a reasonable doubt that the crime has been committed then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances surrounding it, and the extent to which it has been collaborated." *Gray, supra* at 386.

During that hiatus the law of corpus delicti became established English common law and influenced American jurisprudence.[4] Shocked by notorious cases in which the "deceased" returned alive after the defendants were executed for the murder of people whose bodies were never discovered, the English courts developed the evidentiary concept of corpus delicti. By 1847 the corpus delicti rule be-

---

4. See note, 103 U. Pa. L. Rev. 638 (1955). This English law principle was cited approvingly by U.S. evidentiary commentators as early as 1846, e.g. Wharton On Evidence cited the case of *Mose v. State*, 36 AL 211, 232 (1860). Other states which adopted the corpus delicti rule before 1890 were Virginia, Arkansas, Alabama, Mississippi, and North Carolina.

came a standard of English law. For example, in the case of *Two Hale, Pleas of the Crown*, 290, the court said:

"I would never convict any person for stealing the goods Cujusdam ignoti merely because he would not give an account of how he came by them, unless there were due proof made, that a felony was committed of these goods . . . I would never convict any person of murder or manslaughter unless the fact were proved to be done, or at least the body found dead. . . .".

Thus, the rule was explicitly designed to protect against convictions where no crime had occurred, and was recognized as common law here and in Great Britain in the nineteenth century.

The modern concept was definitively explicated in *Commonwealth v. Turza*, 340 Pa. 128, 16 A.2d 401 (1940), unequivocally establishing that the commonwealth's obligation is limited to proving the occurrence of an injury or loss together with criminality as the cause. As stated in *Turza:*

"The grounds on which the rule rest are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of the conviction where no crime has in fact been committed; consistent therewith all that the rule requires is that the first two of the above mentioned three elements be independently established. Thus, whenever, as here, the commonwealth in a homicide case has established that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally caused by *someone*, the rule is satisfied and admissions or confessions of the accused may then always be received as proof of the identity of the guilty agent . . ." *Id.* at 134, 16 A.2d at 404.

The clear purpose and intent of the corpus delicti rule is to avoid conviction due to confessions which are factually incorrect because no crime had been committed. The motivations behind such confessions are beyond the scope of the rule. Of course, where involuntariness or unreliability occur as a result of state action, constitutional principles are invoked and the inquiry concerning admissibility is distinct from that surrounding corpus deliciti. No issue of these dimensions exists in the instant case.

In the case sub judice the defendant contends the commonwealth failed to demonstrate a corpus delicti of burglary and theft before offering the appellant's statements confessing to both.

At trial the defense stipulated to the preliminary hearing testimony of Mr. Robert Jacobs.[5] His testimony established that on February 27, 1986 at 3:00 p.m. after learning of entry into his apartment from the police, he returned to his home at 20th & Locust Streets in the City and County of Philadelphia to discover several items of personal property missing, including two cameras, three camera lenses, an Intellivison computerized TV game, a watch, credit cards and business cards. Although Mr. Roberts was unable to determine how entry had been made he knew immediately that someone had been in his home.[6] No one had permission to enter or remove his possessions. The police later returned the complainant's three lenses, his business cards, and the

---

5. R. 10-19.

6. R. 17. The Crimes Code does not require a breaking in order to establish burglary. 18 Pa. C.S. §3502(a). Any unprivileged entry by surreptitious means is sufficent. *Commonwealth v. Tessel*, 397 Pa. Super 37, 44, 500 A.2d 144, 147 (1985).

card case taken from his apartment. The commonwealth next introduced the defendant's statement made to Detective William Sammons of the Central Detective Division in Philadelphia in which defendant admitted that he acted as a lookout while the other individuals entered the apartment and that he received some of the stolen items for his participation in the crime.[7]

The evidence presented at trial clearly demonstrated an injury or loss due to theft consistent with burglary and the fact of someone's criminality as the source of that loss. The two elements of corpus delicti were established. The evidence of the specific loss of personal property within the apartment by criminal agency established the crime of theft. Once the corpus delicti for either crime was established the statement was properly admitted into evidence.[8]

Clearly the complainant's testimony established surreptitious entry without permission and the theft

---

7. R. 30-38.

8. See *Commonwealth v. Tessell*, 347 Pa. Super 37, 500 A.2d 144 (1985).

"Where a defendant's confession relates to, two separate crimes with which he is charged, and were independent evidence established the corpus delicti of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to insure that the policies underlying the corpus delicti rule are not violated. Here, we have concluded, that the relationship between the theft and the burglary was sufficiently close to permit the court, upon proof of the corpus delicti of theft, to admit appellant's confession as evidence that appellant had committed not only the theft but also the burglary." See also *Commonwealth v. Stokes* 225 Pa. Super. 411, 311 A.2d 714 (1973); *Commonwealth v. Steward* 263 Pa. Super. 191, 397 A.2d 812 (1979).

468

of personal property. Indeed it could not be otherwise. The law does not require a criminal tribunal to accept a conjecturally possible but inherently improbable explanation consistent with the defendant's innocence to preclude the use in evidence of an inculpatory statement. After having circumstantially established a corpus of burglary and theft the commonwealth could offer into evidence the defendant's statement.

Proof beyond a reasonable doubt requires the absence of doubt premised on reason, not doubt founded on speculation or a mere hypothetical possibility.[9] The defendant's statement which was knowingly, intelligently and voluntary offered after constitutionally required warnings was properly admitted into evidence and provided the identity of the criminal actor. The defendant's conviction therefore was based on properly presented proof of guilt beyond a reasonable doubt.

9. See *Commonwealth v. Johnson*, 162 Pa. 69 for the first of many formulations of this requirement. Standard Criminal Jury Instruction 7.01.