J-A08024-21

2021 PA Super 99

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TORIANO CHAZ GOLDMAN | : | |
| | : | |
| Appellant | : | No. 606 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 14, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002303-2019

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.:                                    **FILED:  MAY 14, 2021**

Toriano Chaz Goldman (Appellant) appeals from the judgment of sentence imposed following his summary conviction of disorderly conduct. *See* 18 Pa.C.S.A. § 5503(a)(1).  We affirm.

Shortly before midnight on January 11, 2019, Sergeant Robert Bennett of the Upper Darby Police (Officer Bennett or Sergeant Bennett) responded to a report of an intoxicated man causing a disturbance at an Exxon convenience store.  Officer Bennett parked his police vehicle in the store's lot and encountered the witness who had called 911 to report the disturbance.  This witness remained seated in her vehicle but pointed Officer Bennett in the direction of the convenience store, indicating that Appellant was inside.

---

[*] Former Justice specially assigned to the Superior Court.

Upon entering the store, Officer Bennett first encountered the store clerk, who was also calling 911 at that time based on Appellant's behavior. The clerk pointed Officer Bennett toward the rear of the store, where Officer Bennett found Appellant standing and staring at the wall with his hands in his pockets. Appellant appeared dazed, unsteady on his feet, and smelled of alcohol. Officer Bennett approached Appellant and asked him to turn around and remove his hands from his pockets. Though Appellant eventually complied, Officer Bennett stated that Appellant became agitated and combative, and told Officer Bennett, "get the fuck away from me" and "you don't have to talk to me, fuck you." N.T., 4/15/19, at 10; **see also** N.T., 10/21/19, at 12, 64. Appellant walked away from Officer Bennett, who stated he was not finished questioning Appellant. Appellant ignored Officer Bennett and continued walking to the store's exit. Officer Bennett repeatedly asked Appellant to stop and followed Appellant to the door. Appellant continued to ignore Officer Bennett and slammed the door on him while exiting the store.

Several backup officers responded to the scene and encountered Appellant in the parking lot. These officers also ordered Appellant to stop; he refused to comply. The officers then informed Appellant he was under arrest. Appellant resisted and became physically aggressive; he kicked at the officers and swung his elbows to evade arrest. The officers employed a taser and canine unit to subdue Appellant and eventually placed him in handcuffs.

Law enforcement subsequently obtained surveillance video from outside of the store on the night of the incident. Officer Bennett explained:

> The videos showed [Appellant] in the parking lot of the Exxon, walking -- for a good half an hour, walking in circles. At one point he fell completely flat on his face. At another point he got up and was waving his arms in the air. At one point he laid down in the parking lot for about five minutes, got back up, walked around in circles again, fell on his face again.

N.T., 4/15/19, at 9.

The Commonwealth originally charged Appellant with resisting arrest, public drunkenness, and two counts of disorderly conduct.[1] In April 2019, the Commonwealth amended the charges to include three additional counts of disorderly conduct.

On June 13, 2019, Appellant filed an omnibus pre-trial motion, including a motion to suppress evidence. Appellant claimed Sergeant Bennett lacked reasonable suspicion or probable cause to stop and arrest Appellant. The trial court conducted a suppression hearing on October 21, 2019. On November 22, 2019, the court entered an opinion and order denying suppression.

Prior to trial, the Commonwealth withdrew all charges against Appellant other than one count each of disorderly conduct and public drunkenness, graded as summary offenses. At a bench trial on January 14, 2020, the court found Appellant guilty of disorderly conduct and not guilty of public drunkenness. The court sentenced Appellant to 48 hours in jail – with

_____

[1] 18 Pa.C.S.A. §§ 5104, 5505, 5503(a)(1) and (a)(3).

- 3 -

immediate discharge – and imposed a fine of $300. Ten days later, Appellant filed a "notice of appeal for trial *de novo*," which the trial court denied.

On February 11, 2020, Appellant timely appealed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, pursuant to which Appellant filed an 8-page statement that was not concise and consisted of 38 paragraphs. On appeal, Appellant presents the following seven issues for review:

1. Whether the Commonwealth failed to establish a *prima facie* case?

2. Whether evidence is insufficient to sustain a guilty verdict where "incontrovertible evidence" being video evidence completely contradicts the government's case and the trial court's decision?

3. Whether certain free speech is protected under the First Amendment and therefore does not rise to disorderly conduct?

4. Whether the arresting police officer lacked reasonable suspicion and probable cause to detain and then arrest Appellant?

5. Whether the warrantless arrest for a summary offense was unlawful because prohibited [*sic*] under 42 Pa.C.S. § 8902, not authorized under the Pennsylvania Rules of Criminal Procedure, and because no misdemeanor occurred in the arresting officers' presence?

6. Whether the trial court commits reversible error when it improperly considers the hearsay statements of two alleged eyewitnesses and not just for the purpose of explaining the arresting officer's course of conduct, but instead as substantive evidence of the criminal charges?

7. Whether Appellant is entitled to a trial *de novo*?

Appellant's Brief at 6 (issues renumbered for ease of disposition).

We simultaneously address Appellant's first three issues challenging the sufficiency of the evidence supporting his sole conviction, the summary offense of disorderly conduct.

Our standard of review is settled:

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations omitted). "[A]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances."

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa. Super. 2016).

Appellant argues the Commonwealth failed to present sufficient evidence to establish a *prima facie* case of disorderly conduct under 18 Pa.C.S.A. § 5503(a). *See* Appellant's Brief at 29-36. He claims:

> the Commonwealth presented no evidence of a physical altercation, obscene gestures or language, nor were any loud or abusive words or behaviors accompanied by actual physical aggression. Despite Officer Bennett's characterization of Appellant's behavior as erratic, agitated, or intoxicated, nothing was directed physically at the police officer, nor was there cause for concern for any public danger, annoyance or alarm.

*Id.* at 30 (citation omitted).

Appellant further asserts:

Officer Bennett largely positioned his theory of disorderly conduct based on a few mere epithets and the accusation of "slamming of the door," which was thoroughly proven to be untrue at all stages of the proceedings.

*Id.* at 31 (citation omitted).

Appellant also contends the surveillance video constituted incontrovertible evidence of his innocence by showing he "did not 'slam the door' in Officer Bennett's face nor delay him from exiting the convenience store." *Id.* at 54-55.

Finally, Appellant asserts the epithets he directed at Officer Bennett did not constitute criminal conduct because he was exercising his right of protected free speech. *See id.* at 57-59. Appellant states his "behavior was alleged to be minimal – just a few epithets – and not directed in any aggressive or dangerous way at the police officer, and not harassing or disturbing any public bystanders." *Id.* at 57.

The relevant statute provides:

**(a) *Offense defined* --** A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a). The statute further provides that conduct is considered "public" if it affects or is likely to affect "persons in a place to which the public or a substantial group has access"; among these places are, *inter alia*, "**places of business** or amusement, any neighborhood, or any premises which are open to the public." *Id.* § 5503(c) (emphasis added). Our Supreme Court has explained:

> whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.

*Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (citation omitted).

Here, the trial court found no merit to Appellant's sufficiency challenge, reasoning:

> The Appellant fails to acknowledge that it was public calls for police assistance and interdiction that brought the Upper Darby Police to the scene. It is a plain inconvenience to the public to have the Appellant acting in the manner he so behaved.
>
> The Appellant, while exhibiting behavior consistent with being under the influence of drugs and/or alcohol, became agitated and physically demonstrative, shouting curses and acted dissociative of [Officer Bennett's] instructions and turned away from the officer when commanded to stop and turn around, thereby quickly escalating both the danger to himself, the officer, the store clerk and the public.
>
> The Appellant's conduct was sufficiently extreme[, such that] the store clerk . . . call[ed] 9-1-1 for police assistance due to the likely futility and threat of harm of engaging the Appellant directly. The clerk's decision to seek police interdiction was well advised versus the risk of engaging the Appellant; the Appellant demonstrated he was not going to leave the premises peaceably.

Instead, the Appellant shouted obscenities at [Officer Bennett] and slammed the entry/exit door into the [] officer. Appellant fought officers and wouldn't walk or stand once cuffed.

This escalated into the melee that ensued wherein the Appellant's attempt to fend off arrest precipitated the involvement of multiple officers and the deployment of a taser. Appellant acted in an aberrant, threatening, violent and belligerent and non-reassuring manner, plainly escalating the requisite quantum of police interdiction due to his own behavior.

The obscenities shouted at the responding officer were part of a course of escalating conduct designed to and recklessly creating public alarm, annoyance and inconvenience. ***See Commonwealth v. DeLuca***, 597 A.2d 1121, 1123 (Pa. 1991) ("In focusing on whether [accused] caused public alarm, annoyance or inconvenience, the Superior Court ignored the alternative equally important evil sought to be prevented by the statute, to wit: 'recklessly creating a risk' of public alarm, annoyance or inconvenience. The police in [***DeLuca***], in response to a report of a stabbing, arrived at 1:00 A.M. outside a local tavern and were confronted with a large crowd. Such a situation is, by its nature, fraught with danger; danger not only to participants in whatever incident may have been the genesis of such a scene, but danger to bystanders, passersby and arriving police officers. Here, the officer made no illegal or unreasonable request of the [accused]. The [accused's] response was the very type of spark the statute so plainly seeks to extinguish before it becomes a flame.").

* * *

[Regarding Appellant's claim that the surveillance video proved his innocence:] Appellant doesn't even articulate some reasoning or point to some portion of the record to inform this court of what particular aspect of the video evidence was an indisputable and material contradiction of Sergeant Bennett's testimony. The absence of any particulars or specifics in this claimed error deprives the trial court of any basis of analysis and compels the trial court to speculate. Therefore, the Appellant has waived any issue related to his supposed claim that video evidence incontrovertibly contradicted [Sergeant Bennett's] testimony. ***Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa. Super. 2015) (defendant waived for appeal claim that evidence was insufficient

to support conviction where Rule 1925(b) Statement simply declared, in "boilerplate fashion" that evidence was insufficient). . . . Appellant does no more than offer vague and unsupported generalities which appear to materially mischaracterize the record in a contrived effort to create some issue of error.

Trial Court Opinion, 6/3/20, at 32-33, 38-39 (some citations omitted).

The trial court further rejected Appellant's sufficiency claim pertaining

to his right to free speech:

The disorderly conduct statute must not be used as [a] catchall or dragnet for prosecution of conduct that is uncivil, annoying or irritating. *Commonwealth v. Gilbert*, 674 A.2d 284, 287 (Pa. Super. 1996). [Section 5503] was not unconstitutionally applied to Appellant, who was not exercising any constitutionally protected right, but was rather hurling epithets at Sergeant Bennett in a disorderly fashion. *See Commonwealth v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980) [(holding evidence was sufficient to support defendant's misdemeanor conviction for disorderly conduct when he shouted "fighting words" at meter maid on a public street)]. When [a person's] protected First Amendment right of free speech is implicated, it is necessary that [the] actor intend to breach public peace by making unreasonable noise prohibited by [] section [5503]; mere annoyance to the public will not suffice. *Commonwealth v. Gowan*, 582 A.2d 879, 882 (Pa. Super. 1990). "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963).

Instantly, the trial court found that the evidence of disorderly conduct in this case was sufficient. The Appellant was no longer a legitimate business invitee on the premises of the Exxon convenience mart when police arrived. The Exxon store clerk was dialing 9-1-1 because of the Appellant's behavior. The Appellant was loitering around the store [and] staring into the wall, plainly intoxicated. The Appellant became defiant to Sgt. Bennett's instruction to cease and leave the premises. The Appellant turned away from Sgt. Bennett and began his obscenity-laced tirade. Such an escalating confrontation creates an annoying disturbance to the public, such that a member of the public would experience a sense of danger, risk or threat in the

presence of the escalating confrontation between the Appellant and the police. Of course, the confrontation *sub judice* did escalate and the Appellant had to be subdued with the assistance of multiple officers, a police dog and multiple taser deployments. Such sharply escalating confrontation poses the dangers to the public that did, in fact, occur; that is, the confrontation devolved into a physical melee. The escalating confrontation and physical melee between the Appellant and the police created the very tumult, public danger, inconvenience and annoyance that [the] disorderly conduct offense was created to deter.

The Appellant was not engaging in any constitutionally protected speech when he hurled his obscenity laced tirade at Sergeant Bennett. Variously yelling "fuck you" and "fuck you, don't talk to me" at Sgt. Bennett in a small service station convenience store, while having no legitimate business on the premises and being intoxicated to a degree exhibited by the Appellant, strikes at the very heart of the meaning of public unruliness contemplated by the statute. The act element of the crime of disorderly conduct may be established by a showing that the defendant engaged "in fighting or threatening, or in violent or tumultuous behavior" or that he made "unreasonable noise" or used "obscene language" or gestures. 18 Pa.C.S.A. § 5503(a)(1)-(3). The act element of the crime is also met where the actor "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." *Id.* § 5503(a)(4).

The Pennsylvania Superior Court in ***Commonwealth v. Hughes***, 410 A.2d 1272, 1274 (Pa. Super. 1979), clarified that the intent requirement of the crime may be met by a showing of either intent to cause or reckless disregard of the risk of "public inconvenience, annoyance or alarm." *Id.* A person may be guilty of disorderly conduct within the definition of section 5503 if, in the presence of members of the general public, he shouts obscenities "although the principal intent of the defendant may have been to insult the police rather than to cause public inconvenience, annoyance or alarm." ***Commonwealth v. Hicks***, 3 D. & C. 3d 441 (1975). In ***Hughes***, the Pennsylvania Superior Court rejected claims for reversal because [a]ppellant contended that her conviction was based upon inconsistent evidence. In affirming, the [C]ourt held "viewing the evidence in the light most favorable to the Commonwealth, however, the lower court, as factfinder, could find that appellant shouted threats and

obscenities at members of the general public and at police officers at an early hour in the morning with reckless disregard of the clear risk of public inconvenience, annoyance or alarm." ***Hughes***, 410 A.2d at 1274; ***see also Commonwealth v. Coolbaugh***, 416 A.2d 563, 565 (Pa. Super. 1979) (conduct on part of defendant in precipitating a scuffle between himself and a police officer on a public highway under conditions which constituted a danger to other motorists who might come driving down road gave rise to an inference that defendant intended to cause public inconvenience, annoyance, or alarm or that defendant recklessly created a risk of public inconvenience, annoyance, or alarm and, as such, was conduct which fell within proscriptions of disorderly conduct statute. 18 Pa.C.S.A. § 5503(a)).

Trial Court Opinion, 6/3/20, at 41-43 (citations modified).

The record supports the trial court's determination that the Commonwealth presented sufficient evidence for the court, as factfinder, to conclude beyond a reasonable doubt that Appellant violated section 5503(a)(1). ***See, e.g., Hughes***, ***supra***. Moreover, we find the cases upon which Appellant relies to be distinguishable and unavailing. ***See Hock***, 728 A.2d at 946-47 (defendant did not violate section 5503 where he used a "single epithet, uttered in a normal tone of voice while walking away from the officer, [which] did not alarm or frighten him, and there were no bystanders," and the epithet did not rise to the level of "fighting words"); ***Commonwealth v. Meyer***, 431 A.2d 287, 290 (Pa. Super. 1981) (reversing conviction for public drunkenness where defendant caused a loud disturbance while inside a private club, and there was no evidence he was manifestly under the influence of alcohol). Accordingly, Appellant's three sufficiency issues lack merit.

We next address Appellant's fourth and fifth issues because they are related. Appellant argues the trial court erred in denying his motion to suppress because Officer Bennett lacked reasonable suspicion and probable cause to detain and arrest Appellant. *See* Appellant's Brief at 37-45. Appellant further asserts the warrantless arrest was unlawful under Pennsylvania Rule of Criminal Procedure 400,[2] and 42 Pa.C.S.A. § 8902.[3] *See id.* at 45-49.

_____

[2] In summary criminal cases, Rule 400 governs the means by which an officer may institute a proceeding. The Rule provides:

> When an arrest without a warrant in a summary case is authorized by law, a police officer who exhibits some sign of authority may institute proceedings by such an arrest.

> *Comment*: Only a police officer . . . may institute a summary criminal proceeding by arrest. It is intended that these proceedings will be instituted by arrest only in exceptional circumstances such as those involving violence, or the imminent threat of violence, or those involving a danger that the defendant will flee.

Pa.R.Crim.P. 440, cmt; *see also Commonwealth v. Soto*, 202 A.3d 80, 91 n.4 (Pa. Super. 2018).

[3] Section 8902 provides:

> For any of the following offenses, a police officer shall, upon view, have the right of arrest without warrant upon probable cause when there is ongoing conduct that imperils the personal security of any person or endangers public or private property: (1) Under Title 18 (relating to crimes and offenses) when such offense constitutes a summary offense: 18 Pa.C.S. § 5503 (relating to disorderly conduct).

42 Pa.C.S.A. § 8902(a)(1) (paragraph breaks omitted).

Our standard of review in suppression matters is well settled. We must determine whether the factual findings of the suppression court are supported by the record, and if there is support in the record, we are bound by the facts and may reverse only if the suppression court's legal conclusions from the facts are in error. **Commonwealth v. Tillery**, 2021 Pa. Super. 53 *1 (Pa. Super. 2021). "Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Byrd**, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

Concerning arrests, we have stated:

To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested. A police officer must make a common sense decision whether there is a fair probability that a crime was committed by the suspect. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training. Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent human beings act.

*Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007) (citations and quotation marks omitted). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Freeman*, 128 A.3d 1231, 1242 (Pa. Super. 2015) (citation omitted).

Here, the trial court rejected Appellant's challenge to the lawfulness of the arrest, reasoning:

> Instantly, the [suppression] record is clear, and [Sergeant] Bennett repeatedly testified plainly, consistently and credibly:
>
> He was dispatched to the Exxon station for a report of an intoxicated subject in the parking lot. On arrival, the caller, appearing to be scared to get out of her car, signaled [to Sergeant Bennett] and said "he is inside now" pointing to the Exxon. On entering the Exxon, the station clerk, who was dialing 9-1-1 as Sergeant Bennett arrived, remarked he was glad to see police and pointed to the Appellant at the back of the store.
>
> Sergeant Bennett instructed the Appellant to turn around. Appellant turned and walked toward [] Sergeant Bennett. Appellant was instructed to stop; instead, he turned away, placing his hands in his hoodie pockets and began staring at items on a shelf and launched into a verbal tirade of obscenities, variously saying to [Sergeant] Bennett to leave [Appellant] the fuck alone and saying why are you fucking talking to me. *See* N.T., 4/15/19, at 7. Appellant's behavior caused Sergeant Bennett increasing concern. He described the Appellant as "dazed and confused" and "zoning-out." Sergeant Bennett described the Appellant as just staring at an empty corner wall.
>
> Sergeant Bennett instructed the Appellant to stop, but [Appellant] ignored the command and attempted to leave the scene, exiting the Exxon and slamming the door into Sergeant Bennett to impede apprehension. *See id.* at 8. Officer DeHoratius was waiting outside the Exxon as Appellant continued to leave the scene. Again, Appellant was instructed to stop and ignored the command. Sergeant Bennett and Officer DeHoratius attempted

to place Appellant in custody, at which point the Appellant physically and violently resisted attempts to place him in cuffs.

Sergeant Bennett testified that it took several minutes and several additional officers to handcuff [Appellant,] and that a taser had to be deployed several times. At one point a police dog was brought out in an attempt to subdue the Appellant. The Appellant was kicking, yelling and screaming throughout the attempts to place him in custody and continued that behavior in the police cruiser, as well as at the police station and in the holding cell, to the point that he could not be processed and fingerprinted. Officer Bennett testified that the store clerk was terrified, and that the female caller[, who was parked outside of the store and had called 911,] was in fear of what the Appellant might do, having witnessed his behavior.

Trial Court Opinion, 6/3/20, at 14-15 (footnote omitted, citations modified).

We agree that the evidence established probable cause for the officers to arrest Appellant for disorderly conduct. Further, Appellant's violent and non-compliant conduct demonstrated his intent to flee police apprehension; accordingly, the requirements for a lawful warrantless arrest under Pa.R.Crim.P. 440 were met. *See also* 42 Pa.C.S.A. § 8902(a)(1) (authorizing warrantless arrest for disorderly conduct where, as here, "there is ongoing conduct that imperils the personal security of any person or endangers public or private property"). Accordingly, Appellant's fourth and fifth issues lack merit.

Appellant next contends the trial court erred when it improperly considered, over his objection, "as substantive evidence of disorderly conduct the hearsay statements of two (2) witnesses who never testified under oath

at trial, which is impermissible under the doctrine of indirect or concealed hearsay." Appellant's Brief at 53. Appellant argues:

> For instance, the trial court considered that the convenience store clerk must have identified the Appellant to [] Officer Bennett, despite video evidence showing that other people were in the store prior to the police officer's arrival, raising serious doubts about the out-of-court identification of Appellant by the clerk.

*Id.* at 50-51.

> In evaluating this claim, we recognize:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations omitted).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802.

Instantly, the trial court concluded the evidence was not hearsay. The court explained:

> The trial court permitted Sergeant Bennett to testify as to his police dispatch call to the scene of the Exxon and to the information conveyed by witnesses to the Appellant's location on arrival, and the background events, to explain his course of conduct.
>
> These statements were offered to show how Sergeant Bennett came into contact with Appellant. It is well-established that an out-of-court statement offered to explain a police officer's course of conduct is not hearsay. ***Commonwealth v. Cruz***, 414 A.2d 1032, 1035 (Pa. 1980) [(holding content of police radio call was properly admitted over defendant's hearsay objection where it explained police officer's course of conduct in responding to scene of disturbance)].

Trial Court Opinion, 6/3/20, at 52 (citation and punctuation modified). The court's analysis is supported by the record, and we discern no abuse of discretion. In addition, we are persuaded by the following argument advanced by the Commonwealth:

> Officer Bennett's testimony was limited to his own impressions while at the scene. The Appellant mischaracterizes Officer Bennett's testimony by isolating statements from the record without any context. ***See*** Appellant's Brief at 52-53. When asked whether he knew if the clerk was scared, Officer Bennett responded, "I can't really speak to [the clerk's] state of mind . . . ." N.T., 1/14/20, at 71. Officer Bennett made it clear that he wasn't speaking for these bystanders.

Commonwealth Brief at 17 (footnote omitted, citations modified).

Furthermore, if we were to find that the evidence was hearsay, it was admissible as an exception to the hearsay rule. The "present sense impression" exception allows the admission of a

> statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. When the declarant is unidentified, the proponent shall show by independent

> corroborating evidence that the declarant actually perceived the event or condition.
>
> *Comment*: . . . For this exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory.

Pa.R.E. 803(1).

Here, the only evidence Appellant specifically challenges is Officer Bennett's testimony that the convenience store clerk pointed to Appellant as the person causing a disturbance. Appellant's Brief at 50-51. This contemporaneous statement was admissible under Rule 803(1). **See Commonwealth v. Harper**, 614 A.2d 1180, 1182-83 (Pa. Super. 1992) (trial court properly admitted under Rule 803(1), police officer's testimony concerning a declarant's "contemporaneous verbalization" of the declarant's observation of the crime scene). Also, in this case, the trial court sat as the factfinder, as opposed to a jury; trial judges are presumed to ignore inadmissible evidence. **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014).

To the extent Appellant challenges the admission of other evidence, he has waived such claims for failure to identify the evidence and otherwise develop a legal argument. **See In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) (mere issue spotting without analysis or legal citation to support an assertion precludes appellate review); **see also** Pa.R.A.P. 2119(a).

In his seventh and final issue, Appellant claims the trial court erred by denying his request for a trial *de novo*. Appellant's Brief at 59. Appellant points to the fashion in which he was tried, asserting: "[i]n a summary trial presided over by the court of common pleas, the judge sits 'necessarily' as a magist[erial district judge] pursuant to 42 Pa.C.S. § 912[,[4]] thus entitling a criminal defendant to a trial *de novo*." Appellant's Brief at 59 (footnote added).

It is well-settled that a judge of the Court of Common Pleas may hear a summary case. *Commonwealth v. Ritter,* 408 A.2d 1146, 1147 (Pa. Super. 1979). Further, the Pennsylvania Rules of Criminal Procedure provide that "[i]n any case in which all the misdemeanor, felony, and murder charges are withdrawn pursuant to this rule, any remaining summary offenses **shall be disposed of in the court of common pleas**." Pa.R.Crim.P. 561(C) (emphasis added); *see also* Pa.R.Crim.P. 589(B) ("In any case in which all the misdemeanor, felony, and murder charges are withdrawn pursuant to Rule 561, any remaining summary offenses shall be disposed of in the court of common pleas.").

---

[4] Section 912 provides, in relevant part: "Every judge of a court of common pleas shall have all the powers of a judge or magisterial district judge of the minor judiciary." 42 Pa.C.S.A. § 912.

We do not agree with Appellant that he is entitled to a trial *de novo*. The trial court in this case was not acting as an issuing authority. The court explained it

> was denied the opportunity to sit as either an issuing authority or magisterial district judge. Neither the Appellant's counsel nor the attorney for the Commonwealth so indicated or requested this court to sit as a judge of the minor judiciary or as a magisterial district judge or issuing authority, or in any way raised the issue before moving forward with the bench trial in this matter.
>
> This court granted the Commonwealth leave to withdraw the more serious "court case" charges. [**See** Pa.R.Crim.P. 561(C), **supra**]. This court cannot now be certain such leave would have been granted had this court been informed that it would be sitting as an issuing authority or magisterial district judge, and all the while Appellant secretly reserved his right to trial *de novo*, thereby subjecting the court to a potential redo of the case.
>
> The court's case management function is directly implicated and turns in part on whether counsel are intending to have the court invoke its inherent authority to sit as a magisterial district judge presiding over a summary offense trial in the first instance, or the parties seek to proceed as though the court is sitting as a court of record after coming to an agreement [as] to withdrawal of more serious charges. It would strike this court that a rule permitting Appellant's counsel to stand silent and lull either the assistant district attorney and/or the court into believing the case was being disposed of finally, while secretly intending to file a motion for trial *de novo*, runs afoul of the requisite quantum of candor counsel owes to the court and to his colleague.

Trial Court Opinion, 6/3/20, at 55. We agree with the trial court's disposition as well as its astute reasoning. Accordingly, Appellant's final issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/14/21</u>