J-A02023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRAVIS TARRELL GREEN-WEBB | : | |
| | : | |
| Appellant | : | No. 391 WDA 2021 |

Appeal from the Judgment of Sentence Entered February 18, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002040-2020

BEFORE:  OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MARCH 8, 2022**

Travis Tarrell Green-Webb (Appellant) appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County (trial court) after he was convicted of three misdemeanor counts of disorderly conduct.[1]  Upon review, we affirm Appellant's conviction in part and vacate in part.

On February 10, 2020, at approximately 7:45 AM, Appellant's day started out bad and soon went to worse.  Upon awakening, he was informed that his car was going to be towed because it was parked in a construction

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5503(a)(1), (3), and (4).

zone.  Even though the tow truck had not yet lifted his car off its wheels,[2] he was informed that he would have to pay a service fee to the towing company for being called to the scene.  He then went into a tirade, screaming at police, using profanities, claiming that he was being extorted, and, at one point, in an attempt to stop the car from being towed, clung to the steering wheel and had to be forcibly removed.

His day then became even worse when he was arrested and charged with resisting arrest[3] and three counts of disorderly conduct, all graded as third-degree misdemeanors, and spent three days in jail until released to await trial.

**I.**

At a non-jury trial, the parties stipulated to the facts contained in Avalon Borough Police Officer Leo Di Cesare's affidavit of probable cause (Affidavit) as the sole evidence in the case.  It provides:

> On 2/10/20, [Avalon Police] Officer Di Cesare was working a construction detail in full uniform.  At approx. 07:45 hrs., Banks Construction supervisor summoned me to ticket vehicles and have them moved that were parked in areas marked "No Parking."  In addition, he informed me that there were vehicles parked within the construction area in which they were to work.  The area had

---

[2] Appellant's car was towed at the direction of an Avalon Police Officer.  Section 385-52 of the Avalon Borough Code provides "[n]o vehicle shall be removed under the authority of this article if, at the time of the intended removal, the owner or the person for the time being in charge of the vehicle is present and expresses a willingness and intention to remove the vehicle immediately."

[3] 18 Pa.C.S. § 5104.

been properly posted in advance "No Parking." Officer Di Cesare ran the registrations of the vehicles through Allegheny County 911 and obtained address information. Using the address information, Officer Di Cesare knocked on the doors of the addresses attempting to make contact with the vehicle owners and asked them to move them.

There was a burgundy Buick SDN parked in the properly posted "No Parking" area bearing PA registration KZA3547. The registration came back to 4254 Perrysville Ave. Pittsburgh, PA 15214. A borough parking tag was placed on the vehicle (along with another vehicle behind it) and Joyce Automotive was contacted to remove the vehicles from the designated construction area.

As soon as Joyce Automotive arrived on scene, a black male opened a nearby door in the 600 block of California Ave. He was wearing black sweatpants, with no shirt on and white socks. He began screaming at police asking why we were towing his vehicle. Officer Di Cesare explained to him that he was legally parked but [*sic*] The black male was later identified as [Appellant,] D.O.B. 3/24/91. A black female exited the apartment who was later identified as Teje Hairston D.O.B. 7/15/95.

Ms. Hairston was telling [Appellant] to calm down, as he was screaming "Give me the fucking keys to the car! I'm moving my car! I ain't paying you shit! You ain't taking my car!" The operator of Joyce Automotive informed [Appellant] that he could either pay $50.00 for a show up service fee or the vehicle would be towed. [Appellant] stated that he was [not] doing either and that he was going to move his car. He postured his body and clenched his fists as he approached his driver's side door. Officer Rossetti also assigned to the construction detail (in full uniform) arrived on scene-along with Officer Marculaitis and Chief Kokoski.

Police informed him that the vehicle was going to be towed if he did not pay the service show up fee. [Appellant] continued screaming profanities on the street with parents and children walking nearby and construction workers present. He screamed "This is extortion!" He would not allow police to explain the situation because he was screaming over police. Ms. Hairston continued to scream at [Appellant,] asking him to stop behaving belligerently. He refused. [Appellant] quickly opened the car door

and jumped in the driver's seat with full intent of driving the vehicle away.

Officer Marculaitis gave [Appellant] multiple order[s] to step out of the vehicle because he was being placed under arrest for disorderly conduct. [Appellant] refused to get out of the vehicle. He was physically removed from the vehicle by police and asked to place his hands behind his back. [Appellant] pulled his body away from police and forcibly pulled his arms away to prevent being handcuffed and placed under arrest. Once the handcuffs were placed on [Appellant], he was transported to the Avalon Police Department. Both [Appellant's] vehicle and the vehicle behind it were towed. [Appellant] was transported to the Avalon Police Department. [Appellant] continued screaming profanities at officers and was calling us "Faggots, fucking pussies" and stated he had something for us when he gets out followed by "take your badge off and your gun!" He continued to scream "Fuck you!" at the Avalon Police Department with our borough administrator present.

[Appellant] was transported to the Allegheny County Jail.

Affidavit, 2/10/20, at 2; *see also* N.T., 2/18/21, at 2, 8-11.

After reviewing the stipulated facts and hearing argument, the trial court acquitted Appellant of the resisting arrest charge but found him guilty of the three counts of disorderly conduct, finding that his "conduct caused substantial inconvenience and amounted to disorderly conduct as described in Section 5503A1 and B and A3 and B, and also 5503A4." N.T., 2/18/21, at 11. Appellant agreed to proceed immediately to sentencing. At the conviction under Section 5503(a)(1), the court sentenced Appellant to three days of incarceration, with "credit for three days served and [Appellant was] paroled forthwith." *Id.* at 13. At the convictions under Sections 5503(a)(3) and 5503(a)(4), the court specified "no further sentence is imposed." *Id.*

Appellant timely appealed. He and the trial court have complied with Pa. R.A.P. 1925.

## II.

On appeal, Appellant contends that the evidence was insufficient to make out each charge of disorderly conduct, or, in the alternative, to grade the charges as misdemeanors of the third degree.[4]

## A.

With respect to his conviction under Subsection 5503(a)(1), Appellant argues that the evidence was insufficient because his conduct, as a matter of law, was not tumultuous. "Tumultuous" is not defined in Section 5503 or elsewhere in the Crimes Code. However, in **Commonwealth v. Love**, 896 A.2d 1276 (Pa. Super. 2006), we adopted the dictionary definition of that term:

> Commonly, "tumultuous" is defined as "marked by tumult"; "tending or disposed to cause or incite a tumult"; or "marked by

---

[4] "When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony." **Commonwealth v. Burns**, 765 A.2d 1144, 1148 (Pa. Super. 2000) (citations omitted). "[A]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Rodriguez**, 141 A.3d 523, 525 (Pa. Super. 2016); **Commonwealth v. Goldman**, 252 A.3d 668, 673 (Pa. Super. 2021.

> violent or overwhelming turbulence or upheaval." Merriam Webster's Collegiate Dictionary 1272 (10th ed. 1996). "Tumult" is relevantly defined as "a disorderly agitation ... of a crowd usu. with uproar and confusion of voices," or "a violent outburst." *Id.* at 1271–72.

*Id.* at 1285.

In this case, there is no doubt that after being woken up and finding out that his car was going to be towed and that he was going to have to pay a fee whether the car was towed or not, Appellant "began screaming at police." Affidavit, 2/10/20, at 2. Despite being told by a woman who had also exited the residence to "calm down," he continued to scream, swear and defy the woman, the tow operator and police. *Id.* Appellant "postured his body and clenched his fists as he approached his driver's side door." *Id.* He "continued screaming profanities on the street with parents and children walking nearby and construction workers present," and "would not allow police to explain the situation because he was screaming over police." *Id.* The woman from the residence continued to ask that Appellant "stop behaving belligerently [, but h]e refused[, and] quickly opened the car door and jumped in the driver's seat with full intent of driving the vehicle away." *Id.* Even though officers gave Appellant multiple orders to exit the vehicle, he refused. When the police physically removed him from the vehicle and asked him to place his hands behind his back, Appellant "pulled his body away from police and forcibly pulled his arms away to prevent being handcuffed and placed under arrest," and continued to scream profanities. *Id.* Mindful of our standard of review,

we cannot conclude that the trial court erred in finding that Appellant committed disorderly conduct by engaging "in fighting or threatening, or in violent or tumultuous behavior."

If his conduct was sufficient for his conviction under Subsection 5503(a)(1) for "tumultuous behavior," Appellant then contends that it was insufficient to fall within the ambit of Section 5503(b) to elevate the offense to a misdemeanor of the third-degree. He argues the Affidavit did not establish that he caused substantial harm or serious inconvenience or that he persisted in disorderly conduct after reasonable warning from the police to desist. At oral argument, the Commonwealth indicated that reducing the conviction to a summary offense was appropriate.

In **Commonwealth v. Fedorek**, 946 A.2d 93 (Pa. 2008), our Supreme Court explained that "[S]ection (b) of the statute addresses the issue of how the offense, once established, is to be graded for purposes of sentencing." 946 A.2d at 99. It elaborated:

> Section 5503 is aimed at protecting the *public* from certain enumerated acts. . . . In similar fashion, Section 5503(b), addressing the grading of the offense, focuses upon the offender's *behavior*[.] Thus, when the Commonwealth proves that an offender intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof, by, for example, engaging in fighting or threatening, or in violent or tumultuous behavior, the next level of inquiry, under Section 5503(b), is the degree of the offender's *behavior*. If the offender acted with intent to cause substantial harm or serious inconvenience (and by so doing potentially increased the threat to the public peace and safety), the offense is graded as a third-degree misdemeanor.

*Id.* at 100-101 (emphasis in original).

- 7 -

Here, there is no showing that Appellant intended to cause substantial harm or serious inconvenience or that his conduct went on for a long period of time after the police informed him to cease and desist.

This case was tried only on the Affidavit, which, for the most part, focused on describing Appellant's conduct, not the effects of Appellant's conduct. The Affidavit does not set forth how long the incident lasted so that the impact of his conduct could be determined; it does not state that the police asked him to stop or cease his profanities; that the parents and children walking by were in any way affected or even aware of the incident; or that construction workers, the tow truck driver or the police were prevented from carrying out their jobs or were even delayed in doing so. As to his clinging to the steering wheel of the car so that it could not be towed and having to be forcibly removed, that conduct took place in his car, did not affect the public at large and, in any event, was the predicate for resisting arrest charge for which he was found not guilty and not the disorderly conduct charges.

Given the aforesaid, while the evidence was sufficient to make out the charge under Subsection 5503(a)(1) for tumultuous behavior as a summary offense, the conduct is insufficient to establish the grading of the offense as a misdemeanor of the third-degree under Section 5503(b).

**B.**

In his second issue, Appellant argues the evidence was insufficient to support his conviction under Subsection 5503(a)(3), which defines disorderly

conduct as occurring when a person "uses obscene language, or makes an obscene gesture." Appellant's Brief at 13. Appellant asserts that while "his language was boorish, ill-mannered, and distasteful to the ear, it was not, as a matter of law, obscene." *Id.* at 32. He states, "there is a distinction between merely profane language and obscene language, and [Appellant's] words fell squarely within the former category." *Id.*

In **Commonwealth v. Pennix**, 176 A.3d 340 (Pa. Super. 2017), reversing a disorderly conduct conviction under Subsection 5503(a)(3), we concluded there was "insufficient evidence to support [a]ppellant's disorderly conduct conviction where her words 'were angry words ... having nothing to do with sex.'" *Id.* at 346 (citation omitted). Moreover, in **Commonwealth v. Hock**, 728 A.2d 943, 944 (Pa. 1999), our Supreme Court determined that the appellant's conduct in remarking to police, "F___ you, a_____," did not constitute disorderly conduct under Subsection 5503(a)(3). *Id.* at 944. Justice Castille agreed on this point. He observed:

> Appellant's words, while certainly obscene according to common parlance, do not fit the definition of "obscene" under section 5503(a)(3) of the disorderly conduct statute. For purposes of the disorderly conduct statute, language is obscene if it meets the test set forth in **Miller v. California**, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973): whether the average person would find that the language appealed to prurient interests, whether the language depicted or described, in a patently offensive way, sexual conduct specifically defined by any applicable state law, and whether the language lacked serious literary, artistic, political, or scientific value. **See Commonwealth v. Bryner**, 438 Pa. Super. 473, 652 A.2d 909 (1995) ("go to hell Betsy" not obscene); **see also United States v. McDermott**, 971 F. Supp. 939 (E.D. Pa. 1997) (noting that Pennsylvania General Assembly adopted **Miller** test

to define obscene in 18 Pa.C.S. § 5903(b); "this is bull—", "I'm not f–––ing going anywhere" not obscene).

*Id.* at 947 (Pa. 1999) (Castille, J., dissenting).

Here, the Commonwealth agrees with Appellant. Commonwealth's Brief at 19 (Appellant's words "were angry words . . . having nothing to do with sex.") (citation omitted). Upon review, we likewise agree. Consequently, we vacate Appellant's conviction under Subsection 5503(a)(3).

**C.**

In his third issue, Appellant assails the sufficiency of the evidence with respect to his conviction under Subsection 5503(a)(4), where a person is guilty of disorderly conduct if he "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Appellant argues that while his "behavior with the tow truck driver and police was not praiseworthy, it did not, as a matter of law, pose a danger or risk." Appellant's Brief at 14. Appellant claims "his tirade did not prevent anyone . . . from doing anything [and] there was no evidence that anyone's person or property was placed in harm's way as a result of [his] conduct." *Id.* at 37. In its brief, in response to Appellant's argument, the Commonwealth notes, "[t]here is not a lot of relevant case law dealing with 5503(a)(4)," and stated it "defers to this Court's decision as to whether Appellant's conduct violated 18 Pa.C.S.A. § 5503(a)(4)." Commonwealth's Brief at 20. At oral argument, the Commonwealth indicated its agreement with Appellant on this issue.

We agree that the evidence was insufficient to make out a conviction under Subsection 5503(a)(4). This subsection provides that a person is guilty of disorderly conduct if he or she "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). While Appellant's tirade certainly was "tumultuous," it did not create a hazard or risk to anyone. Again, the Affidavit does not establish that Appellant's tirade prevented anyone—the construction workers, the tow truck driver, the police officers or the parents and children walking by—from doing anything. Moreover, there was no evidence that any person or property was placed in harm's way as a result of Appellant's conduct, including the police. Accordingly, we vacate Appellant's conviction for disorderly conduct under Subsection 5503(a)(4).

In conclusion, we affirm Appellant's conviction under Subsection 5503(a)(1) but reduce it to a summary offense and vacate his convictions under Subsection 5503(a)(3) and Subsection 5503(a)(4). Because Appellant received no further penalty on the latter two charges and was sentenced to time served on the first count, we have not upset the sentencing scheme and remand for resentencing is unnecessary.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judge Olson joins the memorandum.

Judge Murray files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  03/08/2022