J-S46027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS ENRIQUE JIMENEZ CALLEJAS | : | |
| | : | |
| Appellant | : | No. 1343 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 12, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000098-2023

BEFORE:  LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY BOWES, J.:                **FILED:  January 29, 2025**

Luis Enrique Jimenez Callejas appeals from the aggregate judgment of sentence of three to fifteen days of electronic home monitoring followed by six months of probation, along with a $1,000 fine, imposed upon his convictions for driving under the influence ("DUI") and related offenses.  We affirm.

The trial court offered the following summary of the underlying facts:

> Officer Marko Bakovic . . . of the Glassport Borough Police Department was on patrol around 3:00 a.m. on November 10, 2022.  He observed a vehicle stopped, sitting in the middle of the lane . . . of a two-lane roadway, not legally parked, with the engine running.  The officer pulled up next to the vehicle and observed two males inside.  [Appellant] was in the driver seat and the other male in the passenger seat.  The officer shined his flashlight into the vehicle.  Neither [Appellant] nor the passenger acknowledged or responded to the officer's presence when [he] shined his flashlight into the driver side window.  The officer exited his police vehicle and tapped on [the] driver's window.  [Appellant] rolled down the window.  Immediately, the officer was hit with the odor

of alcohol emanating from [Appellant's] breath. He observed that the two men spoke no English. Officer Bakovic waited for his backup to arrive. He observed that [Appellant] had glassy, bloodshot eyes. When [Appellant] stepped out of his vehicle, his gait was unsteady, and he used the vehicle as support to hold himself up. The officer concluded that [Appellant] might be under the influence based on his training and experience. [Since Appellant] was having a hard time standing, th[e] officer and his partners on scene did not believe [he] could safely perform Standard Field Sobriety Tests. He did not believe [Appellant] was capable of safely operating a vehicle. [Appellant] was placed in custody.

Trial Court Opinion, 3/6/24, at unnumbered 2-4 (cleaned up).

Officer Bakovic also testified that when he encountered Appellant's vehicle, it was stopped on a main roadway in Glassport among businesses and residences, there were open parking spaces adjacent to him, and Appellant's brake lights were on. *See* N.T. Suppression Hearing, 8/10/23, at 7, 16-17. He further attested that he activated his emergency lights after shining his flashlight on Appellant and receiving no response, but before he stepped out of his patrol car. *Id*. at 12.

The Commonwealth charged Appellant with one count each of DUI– .16% or higher, DUI–general impairment, and driving without a license.[1] Appellant, arguing that he was stopped without reasonable suspicion or probable cause, filed a pretrial motion to suppress. Officer Bakovic testified to the foregoing facts at the ensuing pretrial hearing. The court did not rule

---

[1] Appellant was also charged with driving an unregistered vehicle, improper stop, and restrictions on alcoholic beverages, which were later withdrawn.

on the motion at that time or issue written findings of fact and conclusions of law. Rather, it orally denied the motion at the subsequent bench trial, wherein it convicted Appellant of the above-listed offenses and sentenced him as indicated hereinbefore.

This timely appeal followed, and Appellant and the trial court complied with Pa.R.A.P. 1925. In his brief, Appellant poses the following issue for our consideration: "Whether the trial court erred in denying [Appellant]'s motion to suppress evidence where he was detained without probable cause, or reasonable suspicion that he was engaged in criminal activity?" Appellant's brief at 5 (some capitalization altered).

We begin with the legal principles that guide our analysis:

> Our standard of review in suppression matters is well settled. We must determine whether the factual findings of the suppression court are supported by the record, and if there is support in the record, we are bound by the facts and may reverse only if the suppression court's legal conclusions from the facts are in error. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing.

*Commonwealth v. Goldman*, 252 A.3d 668, 673 (Pa.Super. 2021) (cleaned up).[2]

Appellant's claim implicates the Fourth Amendment of the United States Constitution, and Article I, § 8 of the Pennsylvania Constitution, both of which protect citizens from unreasonable searches and seizures. *Commonwealth v. Ward*, 318 A.3d 410, 414 (Pa.Super. 2024). To secure this right,

> courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. We have long recognized that there are three levels of intrusion involved in interactions between members of the public and the police. The first is a mere encounter, which requires no level of suspicion at all. The second level is an investigative detention, which must be supported by reasonable suspicion. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Soto*, 202 A.3d 80, 90 (Pa.Super. 2018).

In assessing whether an officer had reasonable suspicion for an investigative detention, our Court has held that "the officer must articulate

---

[2] The trial court did not comply with Pa.R.Crim.P. 581, which provides that after a suppression hearing, "the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I). However, since the court subsequently issued a Rule 1925(a) opinion, we will use the findings therein to conduct our review. *See Commonwealth v. Rivera*, 311 A.3d 1160, 1162 n.2 (Pa.Super. 2024) ("Although a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing, appellate review may be possible based on facts in an opinion in support of an order on appeal." (cleaned up)).

specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." ***Commonwealth v. Singletary***, 267 A.3d 1267, 1276 (Pa.Super. 2021). In this context, we review the totality of the circumstances and "give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." ***Id***.

With respect to whether an officer had probable cause for an arrest or custodial detention, our Court has explained that:

> Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer. The well-established standard for evaluating whether probable cause exists is consideration of the totality of the circumstances.

***Commonwealth v. Fudge***, 213 A.3d 321, 327 (Pa.Super. 2019) (cleaned up).

Where a traffic stop is based upon reasonable suspicion of a Vehicle Code violation, it "must serve a stated investigatory purpose." ***Commonwealth v. Bozeman***, 205 A.3d 1264, 1270 (Pa.Super. 2019). In contrast, "[w]hen no further investigation is necessary to determine if a driver committed a traffic violation or crime, the officer must possess probable cause

to believe that the vehicle or the driver was in violation of some provision of the [c]ode." ***Id***. (cleaned up).

The trial court concluded that Officer Bakovic's interactions with Appellant were proper. First, it stated that the officer "did not conduct a traffic stop" when he initially approached Appellant's vehicle because "the vehicle was already stopped on its own." Trial Court Opinion, 3/6/24, at unnumbered 4. Second, it declared that the officer had reasonable suspicion to "approach the vehicle and assess the unusual circumstances of a vehicle stopped at 3:00 a.m. sitting in the middle of the road . . . with the engine running." ***Id***. Lastly, it expressed that Officer Bakovic had probable cause to conduct a traffic stop because Appellant violated 75 Pa.C.S. § 3351(a), which provides:

> **(a) General rule.--**Outside a business or residence district, no person shall stop, park or stand any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or stand the vehicle off the roadway. In the event it is necessary to stop, park or stand the vehicle on the roadway or any part of the roadway, an unobstructed width of the highway opposite the vehicle shall be left for the free passage of other vehicles and the vehicle shall be visible from a distance of 500 feet in each direction upon the highway.

75 Pa.C.S. § 3351(a). In sum, the trial court concluded that the officer "observed and articulated the appropriate reasonable suspicion and/or probable cause necessary to justify his actions from the initial approach to the vehicle through taking [Appellant] into custody." Trial Court Opinion, 3/6/24, at unnumbered 6.

Appellant's argument that suppression was warranted hinges on his contention that Officer Bakovic seized him without any degree of suspicion of criminal activity. **See** Appellant's brief at 22-23. He relies on our Supreme Court's decision in **Commonwealth v. Livingstone**, 174 A.3d 609, 621 (Pa. 2017), to support his claim that he was unlawfully seized when the officer approached his vehicle with his emergency lights activated without reasonable suspicion. **Id**. at 17-18, 23. Citing **Bozeman**, Appellant also asserts that the trial court erred in concluding that Officer Bakovic had probable cause to stop him based on a violation of § 3351(a) because he was stopped in a business and/or residence district, and § 3351(a) requires evidence that a vehicle be stopped outside, *i.e.*, not within, a business or residence district. **Id**. at 19-22.

In **Livingstone**, an officer saw a car stopped on the side of the highway. He activated his emergency lights, pulled up to the side of the vehicle, and asked if the driver was okay. When she responded, he noticed that her eyes were glossy and thought that she was "looking through him." **Livingstone**, 174 A.3d at 614. He observed that she was exceedingly nervous upon approaching her window and decided to conduct a portable breathalyzer test, which indicated a presence of alcohol, and arrested her for DUI. On appeal to our High Court, one of the questions presented was "whether [Livingstone] was seized by considering whether a reasonable person in [her] shoes would have believed she was free to leave when [the officer] pulled his patrol car,

with its emergency lights activated, alongside her vehicle." *Id*. at 621. The Court concluded that "a reasonable person, innocent of any crime, would . . . interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave." *Id*. The parties had stipulated that the officer did not have any degree of suspicion to justify the stop, and therefore Livingstone was wrongfully seized and subjected to an investigative detention.

In **Bozeman**, two officers were patrolling in their cruiser when they saw a vehicle stopped on a one-way residential street, blocking the lane. The officers ran Bozeman's plate, received negative results, and initiated a traffic stop, at which point Bozeman moved his vehicle to an adjacent parking spot. The stop was based on a violation of § 3351(a), and the Commonwealth and Bozeman differed on whether the standard for stopping a vehicle for that violation should be justified by reasonable suspicion or probable cause. This Court concluded that the police officers needed probable cause, as the purported violation would be clear from the factual circumstances. It further determined that the officers had probable cause because Bozeman blocked a one-way street with a nearby parking spot available. **Bozeman**, 205 A.3d at 1272. As it relates to Appellant's instant contention concerning the location of his vehicle when Officer Bakovic initiated the traffic stop, we also noted that Bozeman did not argue before the trial court that he was inside a business or residence district, but the Court was apparently satisfied that he was in an urban district. *Id*. at 1272 n.7.

The cases of *Livingstone* and *Bozeman* do not support Appellant's protestations because Appellant was not under an investigative detention when the officer initially approached his vehicle, and moreover because the officer had probable cause to conduct the stop. While Appellant maintains that Officer Bakovic had his emergency lights activated when he first pulled up to Appellant's vehicle, the record belies this assertion. During the suppression hearing, Officer Bakovic clearly testified that he did not trigger the emergency lights until after he shined his flashlight on Appellant and Appellant failed to respond. *See* N.T. Suppression Hearing, 8/10/23, at 12. This is unlike the situation in *Livingstone*, where the officer approached the driver with his emergency lights activated and lacked reasonable suspicion that she committed an offense.

Likewise, Appellant's reliance on *Bozeman* to challenge the court's conclusion that the officer had probable cause to stop him pursuant to § 3351(a) based on the vehicle's location fares no better. Regardless of the *Bozeman* Court's application of § 3351(a) to the facts pertinent to the vehicle's location in that matter, the record in the case at bar bears out an independent basis to support Officer Bakovic's probable cause when he illuminated the emergency lights. Plainly, Appellant's vehicle was obstructing the flow of traffic, in contravention of 75 Pa.C.S. § 3364(a), which provides "[e]xcept when reduced speed is necessary for safe operation or in compliance with law, no person shall drive a motor vehicle at such a slow speed as to

impede the normal and reasonable movement of traffic."  Officer Bakovic recounted that Appellant's vehicle sat idle in the middle of his lane of traffic with brake lights engaged when the officer approached from behind, and he remained there even when the officer pulled his cruiser alongside him in the opposing lane and shined the flashlight upon him.  ***See*** N.T. Suppression Hearing, 8/10/23, at 6-7, 9, 16, 18.  Thus, because Appellant clearly impeded the movement of traffic in contravention of § 3364(a), a violation of the Vehicle Code that did not require further investigation because it was clear from the factual circumstances, Officer Bakovic had probable cause to initiate the traffic stop. [3]

Hence, we discern no error by the trial court in the denial of Appellant's motion to suppress.

Judgment of sentence affirmed.

---

[3] "As an appellate court, we may affirm on any legal basis supported by the certified record."  ***Commonwealth v. Ani***, 293 A.3d 704, 729 (Pa.Super. 2023) (cleaned up).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  1/29/2025